IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 24-cv-03089-CNS-MDB

JOEL FITZGERALD, SR.,

    Plaintiff,

v.

REGIONAL TRANSPORTATION DISTRICT,

    Defendant.

## ORDER

Before the Court is Defendant Regional Transportation District's (RTD's) Partial Motion to Dismiss Claims Three and Six of Plaintiff's Amended Complaint. ECF No. 27. Plaintiff responded, ECF No. 37, and Defendant replied, ECF No. 44. The Court has analyzed the parties' briefs and relevant legal authority. For the reasons set forth below, the Court GRANTS Defendant's Partial Motion to Dismiss Claims Three and Six and DISMISSES Plaintiff's third and sixth claims without prejudice.

**I.    BACKGROUND[1]**

Plaintiff served as the Chief of Police and Emergency Management for RTD from August 2022[2] until his termination in September 2024. ECF No. 20, ¶¶ 4, 15. Immediately

---

[1] The background facts are taken from the well-pleaded allegations in Plaintiff's First Amended Complaint. ECF No. 20.

[2] Plaintiff alleges conflicting dates of employment. *Compare* ECF No. 20, ¶¶ 4, 20 (alleging August 2022 as the start of employment), *with* ECF No. 20, ¶ 23 (alleging August 2020 as the date RTD "appointed" Plaintiff as Chief of Police and Emergency Management). However, based on the undisputed facts in the scheduling

1

prior to starting his employment with RTD, Plaintiff worked as the Chief of Police in Waterloo, Iowa. *Id.*, ¶ 25. On July 8, 2022,[3] RTD's Chief Executive Officer and General Manager, Debra Johnson, offered Plaintiff a five-year contract for the Chief of Police position. *Id.*, ¶ 24. Plaintiff moved to Colorado and received a contract "that did not include the 5-year term, but CEO/General Manager Johnson told him that he would be given a 5-year contract later (after she received her 5-year contract), which never happened." *Id.*, ¶ 26.

Plaintiff alleges that, during his tenure, white officers discriminated against and harassed him and other Black staff members. *Id.*, ¶ 42. In May 2024, Plaintiff received a civilian complaint describing two white RTD officers' "racially biased activities." *Id.*, ¶ 44. Upon receipt of the civilian complaint, Plaintiff ordered an investigation and elevated the issue to Johnson. *Id.*, ¶¶ 46–47. Soon after, several white officers filed a complaint against Plaintiff. *Id.*, ¶ 51. RTD subsequently ordered an investigation into Plaintiff and placed him on administrative leave. *Id.*, ¶ 56. Plaintiff alleges that the investigation was flawed in a myriad of ways, including hiring an investigator without police experience and not letting Plaintiff see or respond to the investigative report. *Id.*, ¶¶ 68–71. In August 2024, Plaintiff submitted an Equal Employment Opportunity Complaint. *Id.*, ¶ 64.

---

order, ECF No. 35 at 6 ("Plaintiff began his employment with RTD as Chief of Police and Emergency Management in August 2022."), and Defendant's answer denying the allegations that Plaintiff received an offer and appointment in 2020, ECF No. 26 at 4, the Court presumes that the 2020 date is a typographical error and proceeds under the presumption that Plaintiff began employment in August 2022, consistent with other allegations in the Complaint. Regardless, the dates of employment do not affect the Court's analysis for purposes of resolving Defendant's dismissal motion.

[3] As discussed in the preceding footnote, although Plaintiff alleges that RTD extended the offer in 2020, the Court presumes this to be a typographical error and assumes that RTD actually extended the offer in 2022.

RTD terminated Plaintiff a month later on September 20, 2024. *Id.*, ¶ 65. Plaintiff then filed this civil action on November 5, 2024. ECF No. 1.

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Allegations are read in "the context of the entire complaint." *Chilcoat v. San Juan Cnty.*, 41 F.4th 1196, 1207 (10th Cir. 2022) (quotation omitted). In evaluating a motion to dismiss, "the court must take as true all well-pleaded facts, as distinguished from conclusory allegations, view all reasonable inferences in favor of the nonmoving party, and liberally construe the pleadings." *Reznik v. inContact, Inc.*, 18 F.4th 1257, 1260 (10th Cir. 2021) (citation modified). A plausible claim is one that allows the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then a plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). In assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

### III. ANALYSIS

Defendant moves to dismiss claims three and six of Plaintiff's first amended complaint. ECF No. 27. The Court considers the dismissal arguments to each in turn.

### A. Claim Three: Plaintiff Did Not Sufficiently Plead Facts Showing that RTD Deprived Him of His Interest in Employment Without Due Process

The Fourteenth Amendment protects individuals from being deprived of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. "Under the Due Process Clause, procedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision . . . ." *Ribeau v. Katt*, 681 F.3d 1190, 1193 (10th Cir. 2012) (internal citation and quotation omitted).

"The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972). "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. Determining whether a plaintiff has a property interest is a question of state law. *Id.* at 548 ("Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."). An employee may have a property interest if he has "tenure, a contract for a fixed term, an implied promise of continued employment, or if state law allows dismissal only for cause or its equivalent." *Darr v. Town of Telluride*, 495 F.3d 1243, 1251 (10th Cir. 2007) (internal citations omitted).

The test to determine if a plaintiff has been deprived of due process is twofold: (1) did plaintiff have a protected property interest? If so, (2) did he receive proper due process? *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016).

### 1. Plaintiff Does Not have a Protected Property Interest in His Employment

Defendant contends that dismissal is appropriate because Plaintiff does not allege facts demonstrating that he has a property interest in his employment. ECF No. 27 at 8. Plaintiff proffers three theories under which he asks the Court to conclude he has a property right: (1) substantive restrictions in Policy 211 on RTD's ability to terminate employees, (2) an implied contract with a five-year term, and (3) a five-year term of employment arising under promissory estoppel. ECF No. 37 at 3–4, 8. As the Court will explain below, Plaintiff fails under all three.

### a. The Court Will Not Consider Policy 211 Because It Is Not Central to Plaintiff's Claims

In countering Defendant's contention that Plaintiff does not have a property interest in his employment, Plaintiff attaches Policy 211 of the RTD Policy Manual to his response and argues that it gives rise to a protectable property interest in employment. ECF No. 37-1. The policy outlines the agency's complaint and disciplinary system. *Id.* Defendant argues that the policy manual is extrinsic evidence beyond the pleadings and should not be considered. ECF No. 44 at 2. The Court agrees with Defendant and will not consider Policy 211 in its analysis.

Generally, a court "should consider no evidence beyond the pleadings on a Rule 12(b)(6) motion." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007).

5

However, a court may consider documents referred to in the complaint so long as they are "central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

The Court finds that Policy 211 is not central to Plaintiff's claims because Plaintiff never explicitly mentions Policy 211 in his complaint, but rather only makes broad references to what appears to be multiple different policies. *See* ECF No. 20, ¶ 49 (alleging that an RTD employee informed another of a complaint "in violation of policy"); *id.*, ¶¶ 66–67 (referencing "RTD's discipline policy"); *id.*, ¶ 74 (describing one of the reasons for Plaintiff's termination as "[a]llowing two Black officers to attend vendor-sponsored training in contravention of policy").

Additionally, the Court does not find Policy 211 to be central to Plaintiff's claims because, as the administrator of the policy, it does not apply to Plaintiff. *See* ECF No. 37-1 at 3 ("Only the Chief of Police, or in his or her absence, a designee, shall have the authority to suspend, demote, or dismiss a member, except as stated herein. Accordingly, the Chief of Police must ensure that Internal Affairs investigations are conducted consistent with the provisions outlined in this directive.").[4] Plaintiff even alleges that he

---

[4] Even if Policy 211 did apply to Plaintiff, the restrictions in the policy do not rise to the heightened level of protection sufficient to give Plaintiff a property interest. *See Kingsford v. Salt Lake City Sch. Dist.*, 247 F.3d 1123, 1129 (10th Cir. 2001) ("It is well established in this circuit, however, that procedural protections alone do not create a claim of entitlement to continued public employment. Rather, a legitimate claim of entitlement to continued public employment arises only when there are substantive restrictions on the ability of the employer to terminate the employee." (internal citation omitted)). As Defendant points out, Policy 211 does not "establish a policy wherein an employee can *only* be terminated for cause and nowhere state[s] employees will not be terminated *unless* they engage in such conduct." ECF No. 44 at 4 (citing *Carnes v. Parker*, 922 F.2d 1506, 1151 (10th Cir. 1991)). Further, the list of conduct for which discipline may be imposed is non-exhaustive. *See* ECF No. 37-1.

6

was subject to different investigation procedures than other officers, including investigation by a civilian firm rather than the police department. ECF No. 20, ¶ 68.

### b. RTD Representations Do Not Give Plaintiff a Property Right

Defendant argues that Plaintiff has not sufficiently pleaded facts to rebut the presumption of at-will employment. ECF No. 27 at 6. Plaintiff, in sparse briefing, disagrees, arguing that the alleged representations from RTD are sufficient to give rise to a property right under a theory of promissory estoppel or implied contract. ECF No. 37 at 8–9. The Court agrees with Defendant.

Plaintiff relies on the following allegations from his First Amended Complaint:

- In recruiting [Plaintiff], the CEO/General Manager of RTD, through the HR Department, wrote [Plaintiff] on July 8, 20[22], offering him the RTD Chief of Police position for a five (5) year term;

- RTD recruited [Plaintiff] from his position as Chief of Police in Waterlou [sic], Iowa; and

- Once [Plaintiff] had moved to Colorado to take the Chief of Police position, the contract RTD offered [Plaintiff] did not include the 5-year term, but CEO/General Manager Johnson told him that he would be given a 5-year contract later (after she received her 5-year contract), which never happened.

ECF No. 20, ¶¶ 24–26.

"The standard for existence of a property right in employment is whether the plaintiff has a legitimate expectation of continued employment." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998) (citing *Bd. of Regents v. Roth,* 408 U.S. at 577; *Carnes v. Parker*, 922 F.2d 1506, 1151 (10th Cir. 1991)). In Colorado, there is a rebuttable presumption that every employment relationship is at-will. *See Romero v.*

7

*Denv. Pub. Schs., Dist. No.1*, No. 09-cv-01043-CMA-KMT, 2010 WL 2943528, at *4 (D. Colo. July 22, 2010) ("Absent an explicit understanding to the contrary, every employment relationship is presumed to be 'at-will,' meaning that either the employer or the employee may terminate the relationship at any time.") (citing *Sonderlun v. Pub. Serv. Co. of Colo.*, 944 P.2d 616, 619 (Colo. App. 1997). However, "[i]n certain circumstances, an 'at-will' employee may enforce an employer's statements . . . on a theory of (1) breach of implied contract or (2) promissory estoppel." *Winkler v. Bowlmor AMF*, 207 F. Supp. 3d 1185, 1189–90 (D. Colo. 2016) (internal citations omitted).

***Implied Contract.*** Defendant contends that representations from Johnson do not "give rise to an enforceable contract." ECF No. 27 at 7. Despite withdrawing his breach of contract claim, ECF No. 25, Plaintiff disagrees and argues that "representations of RTD's CEO and General Manager" are sufficient to create an implied contract. ECF No. 37 at 8–9. The Court again agrees with Defendant.

To prevail under an implied contract theory, Plaintiff must meet two requirements. First, he must show that "the employer manifested his willingness to enter into a bargain in such a way as to justify the employee in understanding that his assent to the bargain was invited by the employer and that the employee's assent would conclude the bargain." *Vasey v. Martin Marietta Corp.*, 29 F.3d 1460, 1464 (10th Cir. 1994) (citing *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711–12 (Colo. 1987)). Second, he must demonstrate that his "initial or continued employment constituted acceptance of and consideration for those procedures." *Vasey*, 29 F.3d at 1464 (citing *Cont'l Air Lines, Inc.*, 731 P.2d at 711).

Plaintiff cites *Perry v. Sindermann*, 408 U.S. 593 (1972), for the assertion that "a promise can create an implied contract regarding a property right to employment." ECF No. 37 at 8. *Perry* offers limited guidance on Plaintiff's implied contract theory. *Perry* involved a college professor at a school without an established tenure system. *Perry*, 408 at 600. The faculty guide, however, stated that the faculty member should "feel that he has permanent tenure as long as his teaching services are satisfactory." *Id.* The Supreme Court found the situation to be analogous to a "common law of a particular industry" such that the faculty guide "created [a tenure system] in practice." *Id.* at 602. No such employment guide exists here.

The question is then whether Plaintiff has sufficiently pleaded an implied contract theory. The Court finds that he has not. Plaintiff, relying on the aforementioned allegations, merely states that his "claim of entitlement to his position is [ ] supported by the representations of RTD's CEO and General Manager." ECF No. 37 at 8. The Court does not find this conclusory statement compelling.

Rather, the Court agrees with Defendant that Plaintiff has not pleaded any facts "in which he states that initial or continued employment at RTD constituted acceptance of an offer of a 5-year term," or that "his assent was in any way invited by RTD, or that such assent concluded any bargain with RTD." ECF No. 44 at 8. The Court briefly addresses the allegations Plaintiff relies on for his implied contract argument.

Plaintiff first alleges that RTD recruited him from his previous position in Iowa and offered him employment for a five-year term. ECF No. 20, ¶¶ 24, 25. It is common for employers to recruit candidates from out-of-state. Further, because Plaintiff later received

9

a contract without a five-year term, *Id.*, ¶ 26, the allegations do not plausibly show that he manifested assent to the offer of term employment. *See Rappucci v. High Sierra Energy, LP*, No. 12-cv-00977-RBJ, 2014 WL 5423282, at *2 (D. Colo Oct. 24, 2014) ("A company may tell a potential employee any number of things during its recruitment process; this does not allow the employee to later point to the fact that she reported to work as evidence that all of the employer's recruiting representations are binding contract terms.").

Then, Plaintiff alleges that Johnson told him he would receive a five-year contract "later." *Id.*, ¶ 26. The Court finds that "later" is not sufficiently definite to enable the Court to determine whether a contract has been formed. *See Vasey*, 29 F.3d at 1465; *see also Haynes v. Level 3 Commc'ns, LLC*, 167 Fed. App'x 712, 715–16 (10th Cir. 2006) (holding that oral equal opportunity statements "[w]ithout some detailed employment terms or a guarantee of employment . . . are not enforceable promises."); *Gallegos v. City and County of Denver*, 984 F.2d 358, 363 (10th Cir. 1993) (holding that a promise to take steps establishing a career service position did not produce "anything more than a future expectation."). Accordingly, the Court finds that Johnson's "vague assurances" are not sufficient to give rise to an implied contract claim. *Sonderlun*, 944 P.2d at 619.

Assuming, *arguendo*, that an implied contract exists, the presence of an express employment contract abrogates an implied contract. *See Holland v. Bd. of Cnty. Comm'rs*, 883 P.2d 500, 506 (Colo. App. 1994) ("If an express contract exists and an asserted implied contract is alleged to co-exist and relate to the same subject matter, there can be no implied contract between the parties because the provisions of the express contract supersede those of the implied contract." (internal citation and quotation omitted)).

Plaintiff alleges that he received a contract without a five-year term. ECF No. 20, ¶ 26 ("[T]he contract RTD offered [Plaintiff] did not include the 5-year term . . . ."). And Plaintiff does not dispute the validity of this contract. Therefore, there is an express contract which does not include a five-year term provision and Plaintiff's implied contract theory is not sustainable.

**Promissory Estoppel.** For the first time in his response, Plaintiff appears to make a promissory estoppel argument, despite not including it as a claim for relief. ECF No. 37 at 8 (alleging promise of a five-year contract "is supported by the further allegation that the RTD initially sent [Plaintiff] a contract that included a 5-year term, which [Plaintiff] relied upon in accepting his position"). However, Plaintiff does not adequately brief this argument, nor has he pleaded any allegations sufficient to satisfy the elements of promissory estoppel.[5]

Plaintiff cannot, for the first time in his response, assert that he relied upon the alleged verbal promise when he accepted his position in Colorado. *See Rahman v. Billingsly*, No. 21-cv-02625-KLM, 2023 WL 2018905, at *6 (D. Colo. Feb. 14, 2023) ("[A] Plaintiff cannot use his response brief to attempt to amend the complaint by adding new allegations or new claims.") (internal citation omitted). The Court, in considering

---

[5] The elements of promissory estoppel are as follows:

> (1) the promisor made a promise to the promisee;
> (2) the promisor should reasonably have expected that the promise would induce action or forbearance by the promisee;
> (3) the promise in fact reasonably relied on the promise to the promisee's detriment; and
> (4) the promise must be enforced to prevent injustice.

*Trujillo v. Atmos Energy Corp.*, 896 F. Supp. 2d 949, 954 (D. Colo. 2012) (citing *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008)).

Defendant's motion to dismiss, is "limited to assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (internal citation omitted). Even a liberal construction of the well-pleaded facts forecloses any conclusion that Plaintiff adequately pleaded detrimental reliance when accepting his employment.

    2. *Because Plaintiff Does Not Have a Property Interest, the Court Does Not Address Whether He Received Proper Process*

Because Plaintiff failed to plead facts sufficient to show that he had a property interest, the Court need not address whether he received due process. *See Bd. of Regents v. Roth*, 408 U.S. at 576 ("The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.").

**B. Claim Six: The Court Dismisses Without Prejudice for Failure to Exhaust Administrative Remedies**

Defendant also asks the Court to dismiss Plaintiff's Title VII claim as unripe because he has not exhausted his administrative remedies. ECF No. 27 at 9. Despite listing "Violation of Title VII" as his "Sixth Claim for Relief," ECF No. 20 at 24 (quotation altered), Plaintiff insists that he "has not yet pled a Title VII claim" and "makes clear that he is simply giving the Court and RTD notice that he will add a Title VII claim when he receives a right-to-sue letter from the Colorado Civil Rights Division." ECF No. 37 at 11 (quotation altered).

Whether Plaintiff pleaded a Title VII claim or merely intended to provide "notice" that he will plead this claim, Plaintiff unmistakenly asserts this claim in his complaint. And

12

because he concedes that he has not exhausted his administrative remedies, the Court dismisses his Title VII claim without prejudice. *See Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without* prejudice." (citing *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005))).

## IV. CONCLUSION

For the reasons above, the Court GRANTS Defendant's Partial Motion to Dismiss Claims Three and Six and DISMISSES without prejudice Plaintiff's third and sixth claims. ECF No. 27. The Court grants Plaintiff leave to amend within 14 days if he believes he can cure the deficiencies described in this order.[6]

Dated this 6th day of August 2025.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge

---

[6] Plaintiff represents, in his response, that, as of May 23, 2025, he expects to receive his right-to-sue letter "within the next month." ECF No. 37 at 11.